JEREMY TALCOTT, Cal. Bar No. 311490
JTalcott@pacificlegal.org
Pacific Legal Foundation
701 Kimberly Ave, Suite 200
Placentia, CA 92870-6354
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

PAIGE E. GILLIARD, Cal. Bar No. 330051
PGilliard@pacificlegal.org
JEFFREY D. JENNINGS, Va. Bar No. 87667, *pro hac vice*
JJennings@pacificlegal.org
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Facsimile: (916) 419-7747

CHRISTOPHER M. KIESER, Cal. Bar No. 298486
CKieser@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MORGAN, in his personal and representative capacity as trustee of the HELEN LEAF HANCOCK TRUST et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>DOUG ITO, in his official capacity as the State Oil and Gas Supervisor et. al.,<br><br>Defendants. | No. 8:26-cv-244 MRA (ADSx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: June 23, 2026<br>Time: 10:00 a.m.<br>Courtroom: 9B, 9th Floor<br>Judge: Mónica Ramírez Almadani and Magistrate Judge Autumn D. Spaeth |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

INTRODUCTION.......................................................................................... 1

STATEMENT OF FACTS.............................................................................. 1

STANDARD OF REVIEW ........................................................................... 2

ARGUMENT ............................................................................................... 3

I. The Morgans' Takings Claim is not Barred by the Eleventh Amendment............................................................................. 3

    A. The Morgans are entitled to a federal forum ........................... 4

    B. The Morgans may seek prospective injunctive relief in federal court through *Ex parte Young* ........................................ 5

II. The Morgans' Claim is Ripe ............................................................. 8

III. The Morgans Have Properly Alleged an Uncompensated Taking ........................................................................................... 10

CONCLUSION........................................................................................... 14

CERTIFICATE OF COMPLIANCE ....................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Chemistry Council v. Off. of Env't Health Hazard Assessment*,
  55 Cal. App. 5th 1113 (Ct. App. 2020) ................................................. 14

*Beck Dev. Co. v. S. Pac. Transp. Co.*,
  44 Cal. App. 4th 1160 (Ct. App. 1996) ................................................ 11

*Bernstein v. Bush*,
  177 P.2d 913 (Cal. 1947) .................................................................... 11

*Boone v. Kingsbury*,
  273 P. 797 (Cal. 1928) ........................................................................ 12

*Cebe Farms, Inc. v. United States*,
  116 Fed. Cl. 179 (2014) ....................................................................... 10

*Cedar Point Nursery v. Hassid*,
  594 U.S. 139 (2021) ..................................................................... 3, 6–7

*Cedar Point Nursery v. Hassid*,
  No. 1:16-cv-00185-NONE-BAM,
  Dkt. No. 39 (E.D. Cal. Sep. 1, 2021) ................................................. 7–8

*Dolan v. City of Tigard*,
  512 U.S. 374 (1994) ............................................................................... 5

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*,
  23 F.4th 1195 (9th Cir. 2022) ............................................................... 3

*First English Evangelical Lutheran Church of Glendale v. Los Angeles County*,
  482 U.S. 304 (1987) ............................................................................. 13

*Goertz v. City of Kirkland*,
  641 F.Supp.3d 990 (W.D. Wash. 2022) ............................................... 10

*Heck v. Humphrey,*
512 U.S. 477 (1994)...................................................................... 4

*Knick v. Township of Scott,*
588 U.S. 180 (2019).............................................................. 3–4, 6–7

*Koala v. Khosla,*
931 F.3d 887 (9th Cir. 2019)......................................................... 3

*Lacano Invs., LLC v. Balash,*
765 F.3d 1068 (9th Cir. 2014)........................................................ 3

*Ladd v. Marchbanks,*
971 F.3d 574 (6th Cir. 2020)......................................................... 5

*Lingle v. Chevron U.S.A. Inc.,*
544 U.S. 528 (2005)................................................................... 10

*Los Molinos Mutual Water Company v. Ekdahl,*
695 F.Supp.3d 1174 (E.D. Cal. 2023) ............................................... 8

*Lucas v. S.C. Coastal Council,*
505 U.S. 1003 (1992)............................................................*passim*

*Marblehead Land Co. v. City of L.A.,*
47 F.2d 528 (9th Cir. 1931)......................................................... 12

*Monks v. City of Rancho Palso Verdes,*
167 Cal. App. 4th 263 (Ct. App. 2008) ........................................... 11

*Pa. Coal Co. v. Mahon,*
260 U.S. 393 (1922)........................................................... 1, 12–13

*Pakdel v. City & Cnty. of S.F.,*
594 U.S. 474 (2021)................................................................... 9

*Palazzolo v. Rhode Island,*
533 U.S. 606 (2001)................................................................... 9

*Palm Beach Isles Assocs. v. United States,*
208 F.3d 1374 (Fed. Cir. 2000),
*aff'd on reh'g,* 231 F.3d 1354 (Fed. Cir. 2000)................................... 10

*Pennhurst State Sch. & Hosp. v. Halderman,*
 465 U.S. 89 (1984)..................................................................................... 6

*People v. Associated Oil Co.,*
 294 P. 717 (Cal. 1930)............................................................................. 11

*S.D. Gas & Elec. Co. v. Superior Ct.,*
 920 P.2d 669 (Cal. 1996)......................................................................... 11

*San Remo Hotel, L.P. v. City & Cnty. of S.F.,*
 545 U.S. 323 (2005)................................................................................... 4

*Sanchez v. Torrez,*
 173 F.4th 1202 (10th Cir. 2026) ........................................................ 6–8

*Seven Up Pete Venture v. Schweitzer,*
 523 F.3d 948 (9th Cir. 2008).................................................................... 5

*Sheetz v. Cnty. of El Dorado,*
 601 U.S. 267 (2024)................................................................................... 8

*Sinclair v. City of Seattle,*
 61 F.4th 674 (9th Cir. 2023) .................................................................... 3

*Suitum v. Tahoe Reg'l Plan. Agency,*
 520 U.S. 725 (1997)................................................................................... 9

*Va. Off. for Prot. & Advoc. v. Stewart,*
 563 U.S. 247 (2011)................................................................................... 6

*Verizon Md. Inc., v. Pub. Serv. Comm'n,*
 535 U.S. 635 (2002)................................................................................... 6

*Williamson County Regional Planning Commission v.*
 *Hamilton Bank of Johnson City,*
 473 U.S. 172 (1985)................................................................................... 4

*Ex parte Young,*
 209 U.S. 123 (1908)...........................................................................*passim*

*Zito v. North Carolina Coastal Resources Commission,*
 8 F.4th 281 (4th Cir. 2021) ...................................................................... 5

## Constitutional Provisions

U.S. Const. amend. V ................................................................................. 2

U.S. Const. amend. XI ................................................................................ 3

## Statutes

Cal. Pub. Res. Code § 3280(b) ............................................................... 2, 9

Cal. Pub. Res. Code § 3280(c) .................................................................. 2

Cal. Pub. Res. Code § 3280(c)(1) .............................................................. 9

Cal. Pub. Res. Code § 3281(a) ............................................................... 2, 9

## INTRODUCTION

When the government regulates the use of an owner's property out of existence, it commits a taking just the same as if it had condemned the property through eminent domain. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). By banning oil drilling 3,200 feet from most places where the public lives, works, and plays, SB 1137 does just that to John and Melinda Morgan. And because it kicks in whenever a new home, school, or business opens within 3,200 feet of a well, or when an existing well within the setback needs maintenance, SB 1137 sets the stage to phase out productive use of mineral estates statewide. Indeed, the law facilitates this ever-growing drilling ban by making its setbacks a one-way street, allowing the construction of a home near a well to eventually shut down that well.

SB 1137 doesn't exempt property owners who, like the Morgans, own only a mineral estate (and not the surface). Because the Morgans' mineral estate sits within 3,200 feet of sensitive receptors, the law deprives them of all economically viable use of their property. California may feel strongly about the effects of oil drilling, but even "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 416 (1922).

For the reasons that follow, the motion to dismiss should be denied.

## STATEMENT OF FACTS

California has a long history of oil production, including in Santa Barbara County where the Morgans' mineral estates are located. Complaint (Compl.), ¶¶ 6, 20–23, 46, Dkt. No. 1. Recently, California enacted a slew of restrictions on oil and gas production, including SB 1137, the law at issue here. Compl. ¶¶ 25–38. SB 1137 bans the issuance

1

of permits to drill, deepen, redrill, or to permanently alter the casing of oil wells within a "health protection zone." Cal. Pub. Res. Code § 3281(a). A "health protection zone" means the area within 3,200 feet of a "sensitive receptor." *Id.* § 3280(b). The law defines "sensitive receptors" as homes, many types of schools, community resource centers, health care facilities, live-in housing ("including a long-term care hospital, hospice, prison, detention center, and dormitory."), or "any building housing a business that is open to the public." *Id.* § 3280(c). The law also only applies one way in that if a member of the public decides to build a "sensitive receptor," all areas within 3,200 feet of that new receptor become subject to SB 1137's restrictions. Compl. ¶ 37.

The Morgans' mineral estates fall within SB 1137's "health protection zones." Compl. ¶ 45. As a result, they cannot drill new wells or return their existing wells to production because doing so would require the types of upgrades to oil wells that SB 1137 prohibits. Compl. ¶¶ 48–49. And because the Morgans do not own the surface to these mineral estates and no other minerals (beyond oil) exist within the mineral estates that would be commercially practicable to drill or mine, the Morgans have lost all economic use of their mineral estates. Compl. ¶¶ 41, 54; Mem. P. & A. Supp. Defs.' Mot. to Dismiss (MTD Br.) at 11, Dkt. No. 19-1 ("On a motion to dismiss, this Court is required to take as true Plaintiffs' allegations that SB 1137 deprives them of all economically beneficial use of their mineral estates."). As a result, the Morgans brought a Fifth Amendment takings claim against the state officials responsible for enforcing SB 1137, seeking injunctive and declaratory relief. Compl. ¶ 14.

## STANDARD OF REVIEW

The Rule 12(b)(1) motion presents a "facial" attack on subject matter jurisdiction because the state officials assert that "'the allegations

2

contained in [the] complaint are insufficient on their face to invoke federal jurisdiction,'" without "'disput[ing] the truth of the allegations.'" *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014). Thus, the Court "must accept all of the factual allegations in the complaint as true." *Id.*

For the Rule 12(b)(6) motion to dismiss, the Court must "take all allegations of fact as true and construe them in the light most favorable to the nonmoving party." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). It must also draw "all inferences in the plaintiff's favor[.]" *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019). Accordingly, "'[i]t is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted.'" *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (quotation omitted).

## ARGUMENT

## I. The Morgans' Takings Claim is not Barred by the Eleventh Amendment

As *Ex parte Young* has taught for more than a century, the Morgans have a right to seek injunctive relief in federal court against state officials for the violation of their federal constitutional rights. 209 U.S. 123, 160 (1908) ("The state has no power to impart to [a state official] any immunity from responsibility to the supreme authority of the United States."). *Cedar Point Nursery v. Hassid* recently confirmed this when it blessed a federal takings claim seeking "declaratory and injunctive relief" against California state officials. 594 U.S. 139, 145 (2021). And *Knick v. Township of Scott* confirms that immediate access to federal court under Section 1983 "is as true for takings claims as for any other claim grounded in the Bill of Rights." 588 U.S. 180, 194 (2019).

Nevertheless, the state officials argue that the Morgans' federal takings claim must proceed in state court. MTD Br. at 7–8. To get there,

3

they reason (so far correctly) that sovereign immunity precludes an inverse condemnation action against state officials in federal court. But they then go astray, arguing that the Morgans cannot pursue the usual alternative to a damages remedy in federal court, prospective injunctive relief through *Ex parte Young*, because injunctive relief is never available for a takings claim. This is incorrect.

Most fundamentally, the Morgans are entitled to a federal forum for their federal takings claim. With no avenue to seek just compensation in federal court, the Morgans are entitled to seek prospective relief just as any other constitutional claimant might do. The alternative would effectively reinstitute the discredited state-litigation ripeness rule for takings claims, ignoring the Supreme Court's clear instructions that property rights are not second-class rights.

## A.  The Morgans are entitled to a federal forum

For decades, property owners with takings claims were relegated to state court under the old regime of *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). The state-court litigation requirement hinged on the theory that "if the property owner failed to secure just compensation under state law in state court, he would be able to bring a 'ripe' federal takings claim in federal court." *Knick*, 588 U.S. at 184. But that proved illusory; in reality, property owners were shut out of federal court because of the preclusive effect of losing in state court. *See id.* at 184–85 (citing *San Remo Hotel, L.P. v. City & Cnty. of S.F.*, 545 U.S. 323 (2005)).

*Knick* changed that. The Supreme Court recognized that "[t]he Civil Rights Act of 1871 . . . guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials.'" *Id.* at 185 (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)). Shunting takings

claims to state court had the effect of "relegat[ing] the Takings Clause 'to the status of a poor relation' among the provisions of the Bill of Rights." *Id.* at 189 (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 392 (1994)). After all, "[p]laintiffs asserting any other constitutional claim are guaranteed a federal forum under § 1983." *Id.* So the Court held that a property owner "can bring a federal suit" at the time the government takes his property without compensation. *Id.* at 194.

In short, *Knick* guarantees the Morgans a federal forum for their federal takings claim.

## B. The Morgans may seek prospective injunctive relief in federal court through *Ex parte Young*

This case has one complication that was absent from *Knick*—it's a suit against state officials, who have sovereign immunity, while *Knick* was against a township that lacked immunity.[1] There is no doubt in the Ninth Circuit that Defendants are immune from suits seeking just compensation for a taking in federal court. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008). Recognizing this, the Morgans sought only prospective injunctive and declaratory relief through *Ex parte Young*.

Under *Young*, sovereign immunity does not bar a claim so long as it "'[1] alleges an ongoing violation of federal law and [2] seeks relief properly characterized as prospective.'" *Seven Up Pete Venture*, 523 F.3d

---

[1] Strangely, the state officials assert that *Knick* did not abrogate sovereign immunity. *Knick* had nothing to do with immunity, as it was a case against a township. Similarly, their citations to cases like *Zito v. North Carolina Coastal Resources Commission*, 8 F.4th 281 (4th Cir. 2021), and *Ladd v. Marchbanks*, 971 F.3d 574 (6th Cir. 2020), are misplaced, as the property owners in those cases sought compensation, not prospective relief.

at 956 (quoting *Verizon Md. Inc., v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). This allowance is "necessary to 'permit the federal courts to vindicate federal rights.'" *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984))). The Morgans' complaint fits into *Young* because it seeks only prospective relief, not damages or compensation, and it seeks to restrain enforcement of a law that continues to prevent the Morgans from using their mineral estates.

The state officials don't dispute this. Instead, they say that the Morgans cannot sue under *Young* because injunctive relief is not available for takings claims. They take this principle from *Knick*'s observation that "because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable." *Knick*, 588 U.S. at 201. But that was merely an application of the general principle that equitable relief is unavailable whenever there is an adequate remedy at law. *See id.* at 200 ("[A]s state courts began to recognize implied rights of action for damages under the state equivalents of the Takings Clause, they declined to grant injunctions because property owners had an adequate remedy at law."); *see also Sanchez v. Torrez*, 173 F.4th 1202, 1221 (10th Cir. 2026) ("[T]he Court's assurances in *Knick* reflect the well-settled principle that equitable remedies are unavailable when there is an adequate legal remedy."). So to preclude injunctive relief, the State Officials would have to show that the Morgans have an adequate remedy at law.

They do not have one in federal court, because sovereign immunity precludes it. The Morgans are in the same situation as the successful petitioners in *Cedar Point*, who sued California officials to enjoin their enforcement of a regulation granting union organizers a right to access

6

their farms. Like the Morgans, the growers sued state officials, which meant sovereign immunity precluded a just compensation remedy. 594 U.S. at 145 (noting that the growers sought "declaratory and injunctive relief prohibiting the Board from enforcing the regulation against them""); *see also id.* at 179 (Breyer, J., dissenting) (noting the equitable remedy and arguing that "[o]n remand, California should have the choice of foreclosing injunctive relief by providing compensation"); *Sanchez*, 173 F.4th at 1220 (reasoning that after an injunction, a state "could then decide whether to provide compensation and apply the law constitutionally or to simply abandon its enforcement efforts"). After the Supreme Court in *Cedar Point* held the access regulation effected a taking, the district court entered an injunction prohibiting California officials from enforcing the access regulation. *See* Stipulated J. After Remand, *Cedar Point Nursery v. Hassid*, No. 1:16-cv-00185-NONE-BAM, Dkt. No. 39 (E.D. Cal. Sep. 1, 2021).

So the state officials pivot to asserting that the Morgans' adequate remedy at law is in *state court*. That brings the argument full circle and would effectively reinstate *Williamson County*'s state litigation requirement for takings suits against state officials, rendering *Knick*'s guarantee of a federal forum illusory. *Cf. Knick*, 588 U.S. at 185 ("But the guarantee of a federal forum rings hollow for takings plaintiffs, who are forced to litigate their claims in state court."). It's also precisely what the Tenth Circuit rejected two months ago in *Sanchez*, which was also a takings case brought through *Ex parte Young* against state officials who were immune from just compensation claims. 173 F.4th at 1221 (noting the state officials argued that sovereign immunity bars "lawsuits brought under *Ex parte Young* where there is an adequate remedy under state law"). The Court of Appeals there was "not convinced that *Knick*'s

discussion of state-law remedies reflects a jurisdictional bar for taking lawsuits that otherwise fall within the requirements of *Ex parte Young*." *Id.*

The better course is to recognize that *Knick*'s guarantee of a federal forum for takings claims applies equally to claims against states as to their political subdivisions. *Cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 276 (2024) (the Takings Clause applies to the states "as an undivided whole"). Because of sovereign immunity, property owners who suffer a taking at the hands of the state government must ask for prospective relief if they wish to assert their rights in federal court. But as in *Cedar Point* and *Sanchez*, property owners need not resort to state court simply because their adversary is the state rather than a local government.[2]

Because the Morgans have a right to bring their federal takings claim in federal court, and sovereign immunity precludes a compensation remedy, they may seek prospective injunctive relief in federal court through *Ex parte Young*.

## II. The Morgans' Claim is Ripe

The state officials next assert that the Morgans' claim is unripe because they have not sought a permit to drill. MTD Br. at 9. They are incorrect. A takings claim is ripe for judicial review "once it becomes clear that the agency lacks the discretion to permit any development, or the

---

[2] The state officials cite *Los Molinos Mutual Water Company v. Ekdahl*, 695 F.Supp.3d 1174 (E.D. Cal. 2023). Much of that case involved the rejection of a creative attempt to invoke *Ex parte Young* by asking for an injunction requiring the defendants to pay just compensation for future takings. *Id.* at 1188–89. But in the course of doing that, the district court appeared to suggest that a plaintiff could not seek an injunction under *Ex parte Young* if there is an adequate remedy at state law. *See id.* at 1199. This would be inconsistent with *Knick*'s guarantee of a federal forum for takings plaintiffs, so this Court should not follow it.

permissible uses of the property are known to a reasonable degree of certainty." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001). This is a "relatively modest" requirement and "nothing more than *de facto* finality is necessary." *Pakdel v. City & Cnty. of S.F.*, 594 U.S. 474, 478–79 (2021). Ultimately, the Morgans need only show that "there is no question about how 'the regulations at issue apply to the particular land in question.'" *Id.* (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)). They easily satisfy that requirement.

SB 1137 prohibits the state officials from issuing permits for oil and gas wells within a health protection zone, absent certain circumstances not applicable here. *See* Cal. Pub. Res. Code § 3281(a); *see also* Compl. ¶ 57. A health protection zone is defined as "the area within 3,200 feet of a sensitive receptor." *Id.* § 3280(b); Compl. ¶ 33. And a sensitive receptor is defined, as relevant here, as "a residence, including a private home, condominium, apartment, and living quarter." *Id.* § 3280(c)(1); Compl. ¶ 33. Here, the Morgans have alleged that (1) they own two mineral estates that are within a SB 1137 health protection zone because there are "sensitive receptors" within 3,200 feet of every square foot of the parcels; (2) no exceptions to SB 1137 apply to their mineral estates; and (3) the state officials thus have no authority under SB 1137 to issue a permit. Compl. ¶¶ 33, 57, 58. The state officials admit that "SB 1137 prohibits the issuance of a Notice of Intention (NOI) to drill or rework . . . oil or gas wells within a health protection zone." MTD Br. at 4. The officials' lack of discretion means the case is ripe. *Suitum*, 503 U.S. at 739; *Palazzolo*, 533 U.S. at 622 ("Ripeness doctrine does not require a landowner to submit applications for their own sake.").

///

///

## III. The Morgans Have Properly Alleged an Uncompensated Taking

The state officials also attack the merits of the Morgans' complaint. They raise two main arguments: (1) that the Morgans cannot prove that SB 1137 effects a taking of their mineral estate; and (2) that SB 1137 falls within one of the caveats of *Lucas*. Both arguments fail.

When a regulation "prohibit[s] all economically beneficial use" of a property, it effects a taking just as much as if the government had condemned it. *Lucas*, 505 U.S. at 1029. Defendants correctly recognize that "[o]n a motion to dismiss, this Court is required to take as true Plaintiffs allegations that SB 1137 deprives them of all economically beneficial use of their mineral estates." MTD Br. at 17. Their attempts to avoid the logical conclusion that the motion should be denied fall flat.

Defendants first suggest that SB 1137 is a mere readjustment of rights of the type that is "routinely upheld" because "government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." MTD Br. at 17 (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005)). But *Lucas* itself said this general precept "does not apply to the relatively rare situations where the government has deprived a landowner of all economically beneficial uses." *Lucas*, 505 U.S. at 1018.

The state officials next invoke *Lucas'* discussion of background principles of law. But at the pleading stage, there is not enough in the record to dismiss the case on this ground. The officials would bear the "burden" to establish that background principles limit the Morgans' use. *Cebe Farms, Inc. v. United States*, 116 Fed. Cl. 179, 196 (2014); *see also Palm Beach Isles Assocs. v. United States*, 208 F.3d 1374, 1385 (Fed. Cir. 2000), *aff'd on reh'g*, 231 F.3d 1354 (Fed. Cir. 2000) (same); *Goertz v. City*

10

*of Kirkland*, 641 F.Supp.3d 990, 1000 (W.D. Wash. 2022) (same); *Monks v. City of Rancho Palso Verdes*, 167 Cal. App. 4th 263, 299 (Ct. App. 2008) (same). They'd have to show that SB 1137 does "no more than duplicate the result that could have been achieved in the courts—by adjacent landowners (or other uniquely affected persons) under the State's law of private nuisance, or by the State under its complementary power to abate nuisances that affect the public generally, or otherwise." *Lucas*, 505 U.S. at 1029. Yet California nuisance law "turns on the circumstances of each case" and requires deciding "question[s] of fact." *S.D. Gas & Elec. Co. v. Superior Ct.* (SDGEC), 920 P.2d 669, 696 (Cal. 1996). Oil contamination is not a "nuisance per se" under California law. *Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1206 (Ct. App. 1996). As the Morgans have pleaded many facts that would weigh against a nuisance determination, *see, e.g.*, Compl. ¶¶ 42, 43, 46, 55, dismissal at the pleading stage is inappropriate.

And in any event, it is highly doubtful the state officials could show that any background principle limiting the Morgans' rights exists. *See Bernstein v. Bush*, 177 P.2d 913, 916–17 (Cal. 1947) (noting that "[u]nder the law of this state the landowner has a property right in oil and gas beneath the surface" and the "right to drill" for oil is "a right which is 'as much entitled to protection as the property itself, and an undue restriction on the use thereof is as much a taking 'for constitutional purposes as appropriating or destroying it'" (quoting *People v. Associated Oil Co.*, 294 P. 717, 721 (Cal. 1930)). Specifically, a nuisance plaintiff would have to show that the interference with his enjoyment of his land caused by oil drilling was both "*substantial*" and "*unreasonable*." SDGEC, 920 P.2d at 751. The history of oil drilling in the rural area at issue makes that a nearly impossible task. *See Lucas*, 505 U.S. at 1031 ("The fact that

11

a particular use has long been engaged in by similarly situated owners ordinarily imports a lack of any common-law prohibition."); *Marblehead Land Co. v. City of L.A.*, 47 F.2d 528, 529, 533 (9th Cir. 1931) (upholding urban residential zoning that banned oil drilling because "a well in the heart of a great city would be an intolerable nuisance," but noting that "[i]n an outlying and relatively unsettled district it is obvious that the fire hazard would be much less, if not entirely negligible"). And California traditionally recognized the social utility of oil drilling.[3] *See Boone v. Kingsbury*, 273 P. 797, 812 (Cal. 1928) (oil production is "a public benefit" that contributes to the "comfort of the [human] race," and "is so closely allied with state and national welfare as to make its production a matter of state and national concern"). Even on a full record, the state officials would have an uphill battle to show the rare background principle of law that would "support prohibition of the 'essential use' of" mineral estates in California. *Lucas*, 505 U.S. at 1031; *see also Pa. Coal*, 260 U.S. at 414–15 ("What makes the right to mine coal valuable is that it can be exercised with profit. To make it commercially impracticable to mine certain coal has very nearly the same effect for constitutional purposes as appropriating or destroying it.").

Finally, there is no public safety exception to *Lucas*. The facts of *Pennsylvania Coal* are enough to reject this argument, as the Supreme

---

[3] SB 1137's legislative findings brag about ignoring the social utility of oil production and are explicit that the goal is to shut down all oil production. Defs.' Req. for Judicial Notice in Supp. of Mot. to Dismiss Pls.' Compl. (MJN), at 10–11, Dkt. No. 20 ("Because oil wells generally have a limited productive lifespan prior to the need for reworking, a ban on rework permits will serve to start phasing out existing wells."). Yet nuisance law requires consideration of "the social value of the claimant's activities and their suitability to the locality in question." *Lucas*, 505 U.S. at 1031.

Court held the regulation there to be a taking even though it banned mining coal in such a way that caused surface buildings to cave in. 260 U.S. at 415. Defendants counter only with dicta from *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, where the Court stated that it had "no occasion to decide" the question "whether the county might avoid the conclusion that a compensable taking had occurred by establishing that the denial of all use was insulated as a part of the State's authority to enact safety regulations." 482 U.S. 304, 313 (1987). *Lucas* later addressed all three cases *First English* cited (and that the state officials cite) for the speculative proposition that was not before the Court, finding "[n]one of them that employed the logic of 'harmful use' prevention to sustain a regulation involved an allegation that the regulation wholly eliminated the value of the claimant's land." *Lucas*, 505 U.S. at 1026.

In the end, Defendants' attempt to avoid the clear import of *Lucas* boils down to whether Defendants can show that the right to drill was "not part of [the Morgans'] title to begin with." *Lucas*, 505 U.S. at 1027. The history of California (as shown in the Complaint and in case law) disproves that notion. Compl. ¶¶ 20–24, 46, 55, 68, Dkt. No. 1. Instead, this is a latter-day attempt to regulate away the only use of valuable mineral estates. California can ban oil drilling if it wants, but it cannot do so for free.[4]

---

[4] Many of the externalities that the State's legislative findings identify are simply ordinary pollution. This weighs against any finding that they might be a "substantial" invasion of adjacent properties. For example, the findings identify "diesel engines" and "trucks," but trucks and diesel engines are often used for agricultural and other industrial purposes in rural areas. MJN at 64. Additionally, the legislative findings mention Prop. 65 listings, but emissions can be listed under Prop. 65 even if they

13

## CONCLUSION

The state officials' Motion to Dismiss should be denied.

DATED: June 2, 2026.

Respectfully submitted,

JEREMY TALCOTT
By s/ Jeremy Talcott
   JEREMY TALCOTT

PAIGE E. GILLIARD
By s/ Paige E. Gilliard
   PAIGE E. GILLIARD


JEFFREY D. JENNINGS*
By s/ Jeffrey D. Jennings
   JEFFREY D. JENNINGS

CHRISTOPER M. KIESER
By s/ Christopher M. Kieser
   CHRISTOPER M. KIESER

*Attorneys for Plaintiffs*
**pro hac vice*

---

are a known toxin "only in animals." *Am. Chemistry Council v. Off. of Env't Health Hazard Assessment*, 55 Cal. App. 5th 1113, 1142 (Ct. App. 2020). The Morgans do not oppose the Court taking judicial notice that the legislature relied on the MJN materials (*see* LR 7-9) but they do not concede the accuracy of any of the claims in the materials proffered in the state officials' MJN, and reserve the right to contest them.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,232 words, which complies with the word limit of L.R 11-6.1.

DATED: June 2, 2026.

Respectfully submitted,


JEREMY TALCOTT
By s/ Jeremy Talcott
JEREMY TALCOTT

PAIGE E. GILLIARD
By s/ Paige E. Gilliard
PAIGE E. GILLIARD

JEFFREY D. JENNINGS*
By s/ Jeffrey D. Jennings
JEFFREY D. JENNINGS

CHRISTOPER M. KIESER
By s/ Christopher M. Kieser
CHRISTOPER M. KIESER